IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DE ANGELO LEROY TURNER                    Civil No. 05-587-AA
                                          OPINION AND ORDER
            Petitioner,

      vs.

GUY HALL,

            Respondent.
_____

Marc P. Friedman
Law Office of Marc P. Friedman, Attorney, P.C.
245 W. 13th Ave.
P.O. Box 11167
Eugene, OR 97401
      Attorney for Petitioner


Hardy Myers
Attorney General
Douglas Y.S. Park
Assistant Attorney General
Department of Justice

Page 1 - OPINION AND ORDER

1162 Court Street NE
Salem, OR 97301-4096
      Attorneys for Respondent

AIKEN, Judge:

     Petitioner De Angelo Leroy Turner (petitioner) brings this

action for habeas corpus pursuant to 27 U.S.C. § 2254.

Petitioner further moves for an evidentiary hearing to develop

evidence pursuant to 28 U.S.C. § 2254(e)(2). For the reasons

given below, petitioner's motions are denied, and the case is

dismissed.

<u>PROCEDURAL BACKGROUND</u>

     On February 5, 1993, petitioner was indicted for six counts

of Aggravated Murder (counts 1-6), Rape in the First Degree

(count 7), Sodomy in the First Degree (count 8), and Sexual Abuse

in the First Degree (count 9). <u>See</u> <u>State v. Turner</u>, Multnomah

County Circuit Court Case No. 93-02-30863. All counts were

alleged to have been committed against Erinn Radke on or about

January 21, 1993. A sentence totaling 508 months was imposed.

     Petitioner directly appealed his convictions. On March 18,

1998, the Oregon Court of Appeals affirmed the trial court's

findings in a written opinion. <u>See</u> <u>State v. Turner</u>, 153 Or.App.

66, 956 P.2d 215 (1998). In April 1998, petitioner filed a

Petition for Review with the Oregon Supreme Court. That petition

was denied on June 30, 1998. <u>State v. Turner</u>, 327 Or. 317, 966

P.2d 221 (1998).

Page 2 - OPINION AND ORDER

Petitioner then filed a post-conviction relief petition, and was again denied relief. <u>Turner v. Palmateer</u>, Marion County Circuit Court Case No. 98 C-20227. The Oregon Court of Appeals affirmed without a written opinion, and the Oregon Supreme Court denied review. <u>Turner v. Palmateer</u>, 195 Or.App. 415, 99 P.3d 1239 (2004), <u>rev. denied</u>, 338 Or. 375, 110 P.3d 114 (2005).

Petitioner raised four grounds for relief in his Amended Petition for Writ of Habeas Corpus before this court: (1) violation of Sixth and Fourteenth Amendment rights (right to a fair trial) as a result of the failure to sever the joint trial of antagonistic and adverse co-defendants with the aggravated murder of a single victim; (2) effective assistance of counsel (failure to investigate and prepare for trial and sentencing, including counsel's failure to call several defense witnesses; failure to allow petitioner to testify; and failure to adequately cross-examine witnesses); (3) violation of Fifth and Fourteenth Amendment rights (prosecutorial misconduct) including the alleged illegal recording of the initial contact between petitioner and police officers in Oregon; and (4) petitioner is innocent.

<u>SUMMARY OF FACTS</u>

Petitioner's conviction resulted from his alleged murder of Radke. Petitioner met Radke at the Cattle Company, a Beaverton Bar and restaurant, on the evening of January 20, 1993. That evening, petitioner was accompanied by his co-defendant in the

underlying state case, Ronald Simmons (Simmons).   Radke
accompanied petitioner and Simmons to the Roselawn apartments,
where petitioner's sister, Shanta Turner, leased a residence.

On January 22, 1993, Radke's body was found beneath a house
in Northeast Portland, approximately one block from Turner's
apartment.   Radke's body was found wrapped in a bedspread, and,
with the exception of a blood-soaked brassiere and socks, her body
was unclothed.   Upon examination, officers discovered that Radke
had sustained eight or nine stab wounds to the chest and abdomen.
Bloodhounds led officers to Turner's apartment, where officers
found a bleach spot on the carpet, and blood stains and a blood-
soaked wooden floor.   Officers deduced that Radke was killed in
the early morning of January 21, 1993.

Police officers contacted petitioner and Simmons on January
26 and January 27.   Detectives Nelson and Krohn contacted
petitioner's sister and requested that she tape-record her future
conversations with petitioner or Simmons.   Turner tape-recorded a
conversation with Simmons on January 30, in which Simmons
expressed that he was aware Turner had spoken to the police, but
thought they had an agreement not to speak about Radke's death.
Simmons was arrested on January 29.   At the time, Simmons denied
knowing Radke and denied involvement in her death.

On January 26, petitioner contacted Detective Nelson and
stated initially that he had never met Radke.   When further

Page 4 - OPINION AND ORDER

questioned by police, petitioner provided several different
versions of the events leading up to Radke's death.  Petitioner
ultimately told police that he and Simmons had met Radke at the
Cattle Company restaurant, and the three had gone to his sister's
apartment, where petitioner admitted to raping Radke in the back
bedroom.  In petitioner's final version of events, however,
petitioner admitted to conspiring with Simmons to hide Radke's
murder.

<u>STANDARD OF REVIEW</u>

A.   WRIT OF HABEAS CORPUS

For a writ to issue under the Antiterrorism and Effective
Death Penalty Act of 1996 (AEDPA), the district court must find
that the state court's decision was either: (1) contrary to or an
objectively unreasonable application of "clearly established
Federal law, as determined by the Supreme Court of the United
States"; or (2) "based on an unreasonable determination of the
facts." 28 U.S.C. § 2254(d); <u>see also</u> <u>Barajas v. Wise</u>, 481 F.3d
734, 738 (9th Cir. 2007).  In effect, under the AEDPA, we employ
a "highly deferential standard for evaluating state-court
rulings." <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 (1997).

A state court's findings of fact are presumed correct, and
petitioner bears the burden of rebutting the presumption of
correctness by clear and convincing evidence.  28 U.S.C. §
2254(e)(1).  "Clearly established Federal law" means the

holdings, and not the dicta of the relevant Supreme Court decisions in effect at the time of the state trial. Williams v. Taylor, 529 U.S. 362, 405 (2000).

The "contrary to" clause means that a state court decision is "contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

The "unreasonable application" clause means that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable. Id.

In effect, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). When a state court reaches a decision on the merits, but provides no reasoning to

Page 6 - OPINION AND ORDER

support its conclusion, the federal habeas court must conduct an
independent review of the record to determine whether the state
court clearly erred in its application of Supreme Court law.
Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  In such a
case, even if the district court independently reviews the
record, it still defers to the state court's ultimate decision.
Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002), cert.
den., 539 U.S. 916 (2003).

B.    MOTION FOR EVIDENTIARY HEARING

      Petitioner further moves this court for an evidentiary
hearing pursuant to 28 U.S.C. § 2254(e)(2).  The statute
provides:

        If the applicant has failed to develop the factual basis of
        a claim in State court proceedings, the court shall not hold
        an evidentiary hearing on the claim unless the applicant
        shows that--
            (A) the claim relies on--
                (i) a new constitutional law, made retroactive to
                cases on collateral review by the Supreme Court
                that was previously unavailable; or
                (ii) a factual dispute that could not have been
                previously discovered through the exercise of due
                diligence; and
            (B)  the facts underlying the claim would be sufficient
                to establish by clear and convincing evidence that
                but for constitutional errors, no reasonable
                factfinder would have found applicant guilty of
                the underlying offense.

28 U.S.C. §§ 2254(e)(2)(A)-(B).

      In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable
an applicant to prove the petitioner's factual allegations,

Page 7 - OPINION AND ORDER

which, if true, would entitle the applicant  to federal habeas
corpus relief. Schriro v. Landrigan, ____ S.Ct. ___, 2007 WL
1387923 (2007) (citing Mayes v. Gibson, 210 F.3d 1284, 1287 (10th
Cir.), cert. den., 531 U.S. 1020 (2000).  Since the deferential
standards prescribed in § 2254 control whether to grant habeas
relief, a federal court must take into account those standards in
deciding whether an evidentiary hearing is appropriate. Mayes,
210 F.3d at 1287-88.

Therefore, if the record refutes the applicant's factual
allegations or otherwise precludes habeas relief, a district
court is not required to hold an evidentiary hearing.
Furthermore, the Ninth Circuit has held that "an evidentiary
hearing is not required on issues that can be resolved by
reference to the state court record." Totten v. Merkle, 137 F.3d
1172, 1176 (1998).  This approach is not unique to the Ninth
Circuit. See Anderson v. Attorney General of Kan., 425 F.3d 853,
858-59 (10th Cir. 2005)(when applicant's allegations are
contravened by the record, no evidentiary hearing is warranted);
cf. Clark v. Johnson, 202 F.3d 760, 767 (5th Cir.), cert. den.,
531 U.S. 831 (2000)(evidentiary hearing not required where
applicant has failed to present clear and convincing evidence to
rebut state court's findings).

///

///

DISCUSSION

I.    WRIT OF HABEAS CORPUS

Petitioner argues that his convictions should be vacated because: (1) his trial should have been severed from his co-defendant's trial; (2) counsel performed ineffectively; (3) the prosecution engaged in misconduct, including failing to give petitioner his *Miranda* warnings; and (4) petitioner is innocent of the offenses.

A.    TRIAL COURT'S FAILURE TO SEVER THE TRIAL

Petitioner alleges that his Sixth and Fourteenth Amendment rights were violated because the trial court declined to sever his case from his co-defendant's case.  Petitioner raised this exact claim in the state proceedings.  Specifically, in his brief to the Oregon Court of Appeals, petitioner argued that the trial court erred by declining to sever his trial from his co-defendant's trial.  The Oregon Court of Appeals rejected petitioner's argument in a written decision. See State v. Turner, 153 Or.App. 66, 956 P.2d 215, rev. denied, 327 Or. 317, 966 P.2d 221 (1998).  The court found it unclear whether petitioner's and co-defendant's defenses were necessarily mutually exclusive, as the prosecution's theory was that both men were equally liable. Id. at 73.  That court further held that a severance was not required because petitioner had not shown that the trial court's decision violated a statute or constitutional provision.

Page 9 - OPINION AND ORDER

Petitioner's claim fails here because he is required to show that the Oregon Court of Appeal's decision was "contrary to" or an "unreasonable application" of then-existing United States Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner has failed to do so. Moreover, assuming, *arguendo*, that petitioner met this threshold, he would nonetheless be required to show that the alleged errors had a substantial and injurious effect on the jury's verdict. Brecht, 507 U.S. at 638. Thus, even if the court severed the trial, the following incriminating evidence still existed: petitioner admitted to raping Radke, petitioner repeatedly lied to police, as evidenced by his varying fabrications of the facts, and petitioner's co-defendant testified that petitioner was the killer. Petitioner has failed to show that but for the severance of the trial, he would have been found not guilty. Therefore, petitioner is not entitled to habeas relief on this claim.

B.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner next alleges that but for the ineffective assistance of counsel, he would not been found guilty of Radke's murder. Petitioner raised the ineffective assistance claim in the state post-conviction proceeding and was denied relief. That denial was affirmed by the Supreme Court of Oregon.

The purpose of the effective assistance requirement is "to protect the fundamental right to a fair trial." Strickland v.

Washington, 466 U.S. 668, 684 (1984).  Accordingly, "[t]he
benchmark for judging any claim of ineffectiveness must be
whether counsel's conduct so undermined the proper functioning of
the adversarial process that the trial cannot be relied on as
having produced a just result."  Id. at 686.

    The analytical framework formulated in Strickland reflects
this fundamental concern.  Specifically, Strickland requires a
two-pronged analysis: 1) whether counsel's performance was
deficient; and 2) whether counsel's deficient performance
prejudiced the defense.  Id. at 687.  Nevertheless, "[a]n error
by counsel, even if professionally unreasonable, does not warrant
setting aside the judgment of a criminal proceeding if the error
had no effect on the judgment."  Id. at 691.  Rather, "[t]he
essence of an ineffective-assistance claim is that counsel's
unprofessional errors so upset the adversarial balance between
defense and prosecution that the trial was rendered unfair and
the verdict rendered suspect."  Kimmelman v. Morrison, 477 U.S.
365, 374 (1986).

    Defense counsel has a duty to conduct reasonable
investigation of the claims against the defendant, or to make a
reasonable decision that particular investigation is unnecessary.
Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001) (quoting
Strickland, 466 U.S. at 691).  Yet, to show that counsel's
performance was deficient under the first Strickland prong,

petitioner must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689.

Moreover, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. In other words, the ultimate question is not whether the defendant would more likely than not have received a different verdict but whether he received a fair trial, the result of which is reliable. Id. at 687. Therefore, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Petitioner alleges that trial counsel failed to: (1) investigate and prepare for trial and sentencing, including, but not limited to, calling several defense witnesses; (2) allow petitioner to testify; (3) adequately cross-examine witnesses; (4) anticipate the testimony of the co-defendant; (5) investigate police conduct relating to obtaining a telephone recording and manipulating petitioner into testifying before the grand jury; and (6) engaging in a pattern of fraudulent billing.

Petitioner alleges that his trial counsel failed to adequately investigate and prepare for sentencing due to counsel's failure to properly preserve the issue of the

Washington phone call obtained by Oregon law enforcement in
violation of Washington state law.  Petitioner's attorney and
investigator discovered the illegality of the phone call within a
week after first meeting petitioner.

Petitioner's argument notwithstanding, it is not enough for
petitioner to show that errors had some conceivable effect.
Rather, "[t]he essence of an ineffective-assistance claim is that
counsel's unprofessional errors so upset the adversarial balance
between defense and prosecution that the trial was rendered
unfair and the verdict rendered suspect." Kimmelman, 477 U.S. at
374.  Petitioner has failed to met that burden with regard to the
Washington phone call; in other words, petitioner has not shown
that counsel's failure to preserve the issue cost him a fair
trial.

Further, petitioner alleges that trial counsel provided
inadequate representation by failing to call several key defense
witnesses and by failing to adequately cross examine several
witnesses.  Petitioner's claim of "ineffective assistance,"
stated generally, differs little in substance from the argument
he made before the post-conviction state court.  The post-
conviction court made the following findings:

>    1.    Petitioner asserts that trial counsel failed to
>          adequately investigate his case, prepare for
>          trial, and prepare for sentencing by failing to
>          call witnesses who would have aided in
>          petitioner's defense, including: LaVell Mathews,

Marcus Jones, Shanta Turner, and Patrice Green.

2. Trial counsel was prepared to call petitioner's sister, Shanta Turner, as a witness. Ms. Turner was prepared to offer testimony regarding statements of petitioner's co-defendant and his co-defendant's relationships with women. Judge Frankel ruled that Ms. Turner would not be allowed to offer hearsay testimony about the supposed confession of petitioner's co-defendant . . . Trial counsel did not recall Ms. Turner for rebuttal; he felt she was a real "wild card" as a witness due to her state of sobriety . . .

3. Petitioner failed to prove that his trial counsel was constitutionally ineffective for being unable to put Shanta Turner on a witness. Petitioner failed to prove that his trial counsel acted unreasonably and was constitutionally ineffective for deciding not to call Shanta Turner as a rebuttal witness.

4. Petitioner accuses his attorney of being inadequate for not calling Patrice Green as a witness. But, in fact, Mr. Goffredi did call Ms. Green and had her testify. . . . Failing to [recall] Ms. Green did not have a tendency to affect the outcome of the case, however.

5. Petitioner failed to prove that his trial counsel acted unreasonably and was unconstitutionally ineffective, with respect to his handling of Patrice Green . . . .

In effect, the post-conviction court, having taken into account the various motives and biases of petitioner's witnesses, including their believability and reliability, found that petitioner's trial counsel was not unprofessional and not constitutionally inadequate for failing to call or recall witnesses at petitioner's trial. I find that the post-conviction court's findings are supported by the record.

Petitioner further alleges that his trial counsel denied petitioner his right to testify, resulting in a "gross miscalculation, or, more likely, the consequence of gross incompetence on the part of his counsel." Petitioner's Memorandum, p. 40. The post-conviction court found that "trial counsel made the tactical choice not to call defendant as a witness" because it would be a "bad idea," and petitioner had already testified before the grand jury and had given statements on tape that adequately addressed the salient points of petitioner's defense. The post-conviction court found that petitioner failed to prove that trial counsel was constitutionally inadequate on those grounds.

Finally, with regard to petitioner's claim of inadequate assistance of counsel, petitioner alleges that his trial counsel engaged in fraudulent billing practices. Petitioner specifically alleges that fraudulent billing practices are indicative of trial counsel's failure to provide adequate representation. Yet, as discussed above, the post-conviction court reasonably found that trial counsel provided adequate assistance to petitioner. This allegation suffers from the same flaw as petitioner's previous allegations insofar as even if there was proof of such an allegation, thus, satisfying the first prong of the Strickland analysis, the second prong, i.e., whether counsel's deficient performance prejudiced the defense, is still not met.

In sum, I find that counsel's investigation was reasonable under the Strickland standard. Strickland, 466 U.S. at 691. Petitioner has failed to show that he received ineffective assistance of counsel either during the investigation, trial, or sentencing. Furthermore, petitioner has not shown that but for the alleged errors, no reasonable factfinder would have found him guilty. Therefore, petitioner's claim of ineffective assistance of counsel fails.

   C.   PROSECUTORIAL MISCONDUCT

Regarding the recorded telephone call in contravention of Washington state law, petitioner concedes that this issue may not be exhausted. Petitioner's Reply to State Response p. 5. Therefore this claim is dismissed. Petitioner requests that the court allow other allegation of prosecutorial conduct to continue. The remaining allegations are discussed below.

   1.   Supreme Court Fifth Amendment Jurisprudence

The Fifth Amendment provides that "No person shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment self-incrimination privilege "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California, 380 U.S. 609, 615 (1965). While it is a violation of due process to comment on a defendant's post-Miranda silence, Doyle v. Ohio, 426 U.S. 610, 619 (1976),

pre-<u>Miranda</u> silence may be used to impeach a defendant.  <u>Fletcher</u>
<u>v. Weir</u>, 455 U.S. 603, 607 (1982); <u>Jenkins v. Anderson</u>, 447 U.S.
231, 240 (1980).

When a suspect is taken into custody or otherwise deprived
of his freedom by authorities in a significant way and is subject
to questioning, then the Fifth Amendment privilege is
jeopardized.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  The
safeguards prescribed by <u>Miranda</u> become applicable as soon as a
suspect's freedom of action is curtailed to a degree associated
with formal arrest.  <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440
(1984).  If a suspect is subjected to treatment that renders him
"in custody" for practical purposes, as determined from the
perspective of a reasonable person in the suspect's position, he
will be entitled to the full panoply of protections prescribed by
<u>Miranda</u>.  <u>Id</u>. at 440, 442.  However, the mere fact that an
investigation has focused on a suspect does not trigger the need
for <u>Miranda</u> warnings in non-custodial settings.  <u>Minnesota v.</u>
<u>Murphy</u>, 465 U.S. 420, 431 (1984).

In sum, if there is a custodial nature to the police-suspect
encounter, then comments on the suspect's silence or admission of
his statements would be in violation of the Fifth Amendment.
However, if custody has not yet occurred, then any pre-arrest
statements are admissible, including demeanor evidence.

Here, petitioner alleges that the State coerced involuntary

statements from him in violation of his Fifth Amendment rights.
Petitioner argues that the State engaged in prosecutorial
misconduct by using evidence gained pursuant to an
unconstitutional search and seizure and by manipulating
petitioner into making uncounseled statements.  Specifically,
petitioner alleges that police detectives questioned and
interviewed petitioner numerous times without advising him that
he was a suspect and without providing him with *Miranda* warnings.

     The State argues that petitioner was not in custody, that
his statements were voluntary and thus, Miranda warnings were not
warranted.  Relying on United States v. Guerrero, 847 F.2d 1363
(9th Cir. 1988), and United States v. Gordon, 974 F.2d 1110 (9th
Cir. 1992), the State contends that, looking at the totality of
the facts, police detectives neither employed physical or
psychological coercion nor improperly induced petitioner to make
incriminating statements.

     The first three contacts petitioner had with detectives was
over the telephone.  Specifically, both petitioner and Simmons
returned telephone calls from the police on January 26 and 27,
1993.  At the time, each denied knowing Radke.

     On January 30, 1993, petitioner spoke with Detectives
Bigeagle and Nelson.  He admitted he knew Radke, that he had
sexual intercourse with Radke, but then went to sleep alone in
the living room.  Petitioner alleged that, when he woke up a

Page 18 - OPINION AND ORDER

short time later, he found Radke stabbed to death in the back bedroom.  Although petitioner first alleged that he did not assist in moving Radke's body, he soon changed his story and revealed that he did, in fact, assist Simmons in moving Radke's body and in moving Radke's car a few blocks away from his sister's apartment.

On February 1, 1993, petitioner met with Detectives Nelson and Krohn at his grandmother's home.  The detectives picked him up and took him to the Roselawn apartment, where petitioner reconstructed the crime and provided details about cleaning up the apartment after the murder.  Later that day, petitioner testified before a grand jury.

On February 4, 1993, the detectives again met with petitioner.  They picked him up and drove him to the police station where he was advised of his Miranda rights.  Petitioner stated that he was willing to talk.  Detectives told petitioner that they sensed the he was holding something back from them, urging him to be truthful.  At this time, petitioner admitted that he had sexual intercourse with Radke a second time and then, after that encounter, he returned to the living room and laid down.  DNA evidence confirmed that Radke's blood was found on petitioner's shorts and on clothes worn by Simmons.  Petitioner further told the police that he heard Radke scream, so he ran into the bedroom and found Simmons standing over Radke with a

Page 19 - OPINION AND ORDER

knife in his hand.  The detectives pressed petitioner further, and petitioner admitted that he raped Radke.  However, petitioner denied participating in Radke's murder.

The detectives arrested petitioner and offered him the opportunity to reappear before the grand jury to correct his testimony.  Petitioner testified before the grand jury a second time and implicated Simmons in Radke's death.  Petitioner was then officially booked and charged.

Accordingly, the crux of petitioner's claim is whether petitioner's contacts with police officers before February 4 resulted in custody, so as to warrant advisement Miranda rights. Petitioner concedes that he was not in custody when he contacted police over the telephone, stating that he wanted to tell them everything about Radke's death. Petitioner's Memorandum In Support of Amended Petition for Habeas Corpus, p. 15. Accordingly, I find petitioner was not in formal custody nor was his freedom of movement restricted during the telephone calls at issue.

During petitioner's meeting with detectives on February 1, however, the police picked up petitioner and drove him to the Roselawn apartments, where petitioner reconstructed the crime. In Oregon v. Mathiason, 429 U.S. 492 (1977) (per curiam), the court held that questioning was not custodial because there was no indication that such questioning took place "in a context

Page 20 - OPINION AND ORDER

where [the suspect's] freedom to depart was restricted in any way." Id. at 495. There, the suspect had voluntarily come to the police statement, he was informed that he was not under arrest, and he was informed that he could leave at the end of the interview. Id. Moreover, recent court decisions have looked to "how a reasonable person in the suspect's situation would [have] perceived his circumstances." Yarborough v. Alvarado, 541 U.S. 652, 662 (2004); Berkemer, 468 U.S. 420.

Specifically, in Yarborough, the court looked to the following factors in determining that petitioner was not in custody: (1) the police did not transport petitioner to the station or require him to appear at a particular time; (2) the police did not threaten him or suggest that he would be placed under arrest; (3) the petitioner was told that the interview would not be long; (4) questioning during the interview focused on the co-defendant's crimes, rather than on petitioner; (5) the petitioner was not threatened with arrest and prosecution and the officer appealed to his interest in telling the truth; and (6) the petitioner was asked on two occasions if he wanted a break. Yarborough, 541 U.S. at 664-65.

Turning to the facts of the case at bar, I find that, although detectives transported petitioner to the Roselawn apartments, petitioner voluntarily accompanied detectives on February 1 and voluntarily provided a reconstruction of the crime

scene.  Petitioner argues that if he was not in custody at the
time, he should have nonetheless been given Miranda warnings
because he was questioned under the guise of procuring evidence
in the prosecution of Simmons, yet the police believed that
petitioner was a suspect in Radke's murder.  Yet, as seen in
<u>Yarborough</u>, a line of questioning focusing on the co-defendant's
crimes, rather than the petitioner's crimes, may be indicative of
a determination that a petitioner is not in custody.  Further,
petitioner did not assert that detectives used physical or
psychological coercion at the time.  Moreover, what remains
dispositive is petitioner's perception that he was free at the
time.  Therefore, I conclude that petitioner was not in custody
on February 1.

      D.    <u>PETITIONER'S ACTUAL INNOCENCE</u>

      Petitioner next argues that he is actually innocent of his
crimes and is therefore entitled to habeas corpus relief.
Petitioner raised his actual innocence argument to the state
courts.  Petitioner supports this claim with new evidence that he
believes disproves his guilt.  Because there is no decision to
which I can defer, the court conducts an independent review of
the record with respect to this claim.  <u>See</u> Or. Rev. Stat. 138.50
(allowing collateral challenges for jurisdictional defects of
constitutional deprivations).

      In <u>House v. Bell</u>, ___ U.S. ___, 126 S.Ct. 2064 (2006), the

court declined to decide whether a capital petitioner may assert
a freestanding actual innocence claim. That court provided,
however, that the threshold for such a claim is "extraordinarily
high," and exceeded that of a "gateway" showing actual innocence
under Schlup v. Delo, 513 U.S. 298 (1995), to excuse a procedural
default.

In Schlup, 513 U.S. at 327, the court held that prisoners
asserting innocence as a gateway to defaulted claims must
establish that, in light of new evidence, "it is more likely than
not that no reasonable juror would have found petitioner guilty
beyond a reasonable doubt."  For purposes of Schlup, the evidence
must be "new reliable evidence-whether it be exculpatory
scientific evidence, trustworthy eyewitness accounts, or critical
physical evidence-that was not presented at trial." Id. at 324.
In considering an actual-innocence claim in the context of a
request for an evidentiary hearing, the District Court may
"consider how the timing of the submission and the likely
credibility of the affiants bear on the reliability of the
evidence." House, 126 S.Ct. at 2076.

Although the Schlup standard is demanding, it does not
require absolute certainty about the petitioner's guilt or
innocence. Id.  Rather, a petitioner's burden at the gateway
stage is to demonstrate that "more likely than not, in light of
the new evidence, no reasonable juror would find him guilty

Page 23 - OPINION AND ORDER

beyond a reasonable doubt, or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." Id.  Finally, this inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. Id.

Petitioner alleges that had he been able to introduce wrongfully excluded evidence, he would have been able to bolster his defense through witnesses who would have testified that Simmons was violent toward women.  Petitioner further argues that he would have been able to raise reasonable doubt through the lack of DNA found on the victim.  And, finally, petitioner alleges that new evidence has come forth since the trial and appellate proceedings.

Specifically, petitioner offers the following "new" evidence: (1) an affidavit from petitioner, where he attempts to "truthfully explain for the first time" the events leading to Radke's death; (2) a letter received by petitioner from Simmons, where Simmons implies or "alludes to" petitioner's innocence; (3) an affidavit from LaVelle Matthews, in which Matthews states that he was bribed by Simmons to testify against petitioner; and (4) an affidavit from Mathias Evans, where Evans states that Simmons admitted to the murder.

Assuming the validity and reliability of the "new" evidence, petitioner fails to prove that "it is more likely than not that

no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327.  With regard to petitioner's affidavit, it bears mention that petitioner had the opportunity to testify in state court and thus, had numerous opportunities to tell the truth.  In addition, I find that petitioner's letter from Simmons does not contain implicit acknowledgements or "allusions" to petitioner's innocence. Likewise, the letter does not show Simmons admitting to Radke's murder.  Rather, the letter simply states that Simmons is no longer petitioner's friend and asks petitioner never to contact Simmons again.  In addition, Matthew's affidavit is not "new" evidence, as Matthews testified at trial and the affidavit was submitted during petitioner's post-conviction relief trial, where the post-conviction court found that other evidence controverts the affidavit.  Furthermore, Stephanie Banks, who Matthews claims bribed him, testified under oath that she did not engage in such conduct.  Finally, the affidavit provided by Evans is not reliable evidence of actual innocence, because Evans is a friend of petitioner and has no independent knowledge of the events.

The "new" evidence proffered by petitioner does not provide for his innocence, whether by reasonable doubt or otherwise.  The State's theory at trial was that petitioner and co-defendant Simmons were equally responsible for murdering Radke.  Petitioner admitted to the rape and sexual abuse charges, and even assuming

Page 25 - OPINION AND ORDER

the evidence shows that Simmons helped to kill Radke, it still
would not lead a reasonable juror to have reasonable doubt about
petitioner's culpability.

II.  <u>EXPANSION OF THE RECORD AND EVIDENTIARY HEARING</u>

Petitioner seeks an evidentiary hearing to resolve factual
issues and to expand the record with "new" evidence that was not
presented to the state courts.

A request for evidentiary hearing must comply with 28 U.S.C.
§ 2254(e)(2)(A), which requires that the prisoner make diligent
efforts to search for evidence and pursue his claims in state
court, but was unable to do so. <u>Williams v. Taylor</u>, 529 U.S. 420,
433-38 (2000).  If petitioner failed to diligently develop the
evidence, an evidentiary hearing is permitted only if
petitioner's claim relies on: (1) a new rule of constitutional
law, made retroactive to cases on collateral review by the
Supreme Court, that was previously unavailable; or (2) a factual
predicate that could not have been previously discovered through
the exercise of due diligence. <u>See</u> 28 U.S.C. §§
2254(e)(2)(A)(i)-(ii).  Moreover, the facts underlying the claim
must be sufficient to establish by clear and convincing evidence
that no reasonable factfinder would have found the petitioner
guilty of the underlying offense. <u>See</u> 28 U.S.C. § 2254(e)(2)(B).

Here, petitioner fails to justify why the information in
petitioner's new exhibits could not have been developed during

Page 26 - OPINION AND ORDER

his state-court proceedings.  By way of further illustration, although petitioner's affidavit proffers to finally tell the truth, petitioner had the ability at all times to testify as to the truth of the matter.  Moreover, many of the new exhibits may have been obtained with an exercise of due diligence.

Petitioner is not entitled to an evidentiary hearing because the existing record is sufficient. <u>See</u> <u>United States v. Birtle</u>, 792 F.2d 846, 849 (9th Cir. 1986))(evidentiary hearing is not necessary where motion and files conclusively show that prisoner is not entitled to relief).

<u>CONCLUSION</u>

Petitioner's habeas corpus petition and amended habeas corpus petition pursuant to 28 U.S.C. § 2254 (docs. 2 and 25) are denied.  Further, petitioner's motion for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) (doc. 47) is also denied. This case is dismissed.

IT IS SO ORDERED.

Dated this  29   day of May 2007.

_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge

Page 27 - OPINION AND ORDER